**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH V. LIBRETTI, JR.,** | ) | **CASE NO. 1:13 CV 932** |
| | ) | |
| Plaintiff, | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **STEVEN WOODSON,** | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant's Motion to Dismiss Plaintiff's Fifth Amended Complaint ("Motion"). (**Doc #: 29**.) For the reasons to follow, the Court **GRANTS** the Motion.[1]

**I.**

On March 18, 2011, a federal grand jury returned an indictment charging Plaintiff Joseph V. Libretti, Jr. with one count of conspiring to possess with the intent to distribute, and to distribute, 50 grams or more of methamphetamine from on or about January 2010 through and including the date the indictment was issued. Twelve days later, on March 30, 2011, Defendant (and now-retired DEA Agent) Steven Woodson procured a warrant to search Libretti's Ohio residence and safe deposit box for contraband, evidence and/or fruits of the charged crime. On January 26, 2012, following a jury trial, Libretti was found "not guilty."

---

[1]Also pending is a document entitled "Plaintiff's Motion to Strike Defendant's Reply to Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss; and Motion for Leave to Conduct Discovery." (**Doc #: 36**). For reasons expressed in this Memorandum of Opinion and Order and in Defendant's opposition brief (Doc #: 36), Plaintiff's Motion is **DENIED**.

More than one year later, on March 28, 2013, Libretti filed this civil action against Woodson.  Pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), Libretti seeks monetary damages from Woodson on the basis that he violated Libretti's Fourth Amendment right to be free from unreasonable searches.  Specifically, Libretti contends that probable cause did not exist to justify the search; the warrant authorized a broader search than was reasonable; and the seizure of property exceeded the scope of the warrant.  Woodson now seeks dismissal of the Fifth Amended Complaint ("the Complaint") on the basis that he is entitled to qualified immunity.

## II.

Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To determine whether a government official is entitled to qualified immunity, a court must decide whether the official violated a constitutional right and whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 202 (2001), overruled in part on other grounds by *Pearson*, 555 U.S. at 227.  The Sixth Circuit has held that the district court may use discretion in deciding which question to address first.  *Moldowan v. City of Warren,* 578 F.3d 351, 375 (6th Cir. 2009).

Because qualified immunity is an immunity from suit rather than a mere defense to liability, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the question of immunity is dispositive.  *Saucier*, 533 U.S. at 2000.  When qualified immunity is invoked, it is the plaintiff's burden to demonstrate that the

defendant is not entitled to immunity. *See Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008).

Libretti's *Bivens* claim is based on a violation of the Fourth Amendment. The Fourth Amendment provides that no search warrant shall issue absent probable cause. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citing U.S. CONST. AMEND. IV.) "Probable cause is defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *Id.* (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). It is found where there is a fair probability that contraband or evidence of a crime will be found in the place to be searched. *Id.* (citing *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (citing *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)). The court must judge search warrant affidavits based on the totality of the circumstances, rather than line-by-line scrutiny. *Id.* (citing *United States v. Woosley*, 361 F.2d 924, 926 (6th Cir. 2004)). "Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." *Id.* (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). The magistrate judge's determination of probable cause is afforded great deference. *Id.* (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

### III.

As an initial matter, Libretti contends that Woodson's attachment of the search warrant and the affidavit in support of the warrant to his Rule 12(b)(6) motion necessarily converts the motion into a Rule 56 motion for summary judgment, and seeks discovery to respond to that motion.

Fed. R. Civ. P. 12(d) provides that Rule 12(b)(6) motions to dismiss must be treated as summary judgment motions and resolved under Rule 56 where matters outside the pleadings are presented, and not excluded, by the court.  *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).  As with most rules, however, there is a long-established exception.

> Under certain circumstances, . . . a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. See 11 JAMES WM. MOORE, et al., MOORE'S FEDERAL PRACTICE § 56.30[4] (3d ed. 1998).  This occurs when "a document is referred to in the complaint and is central to the plaintiff's claim. . . ."  Id.  In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment."  Id.; *see*, *e.g.*, *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). . . .

*Id.* (parenthetical omitted).

Because the search warrant and affidavit in support are referenced in the Complaint and central to the *Bivens* claim, and because the Court's probable-cause review is limited to the information presented in the four corners of the affidavit, it is unnecessary to convert the within motion to one for summary judgment.

**IV.**

**A.**

Libretti argues that the affidavit in support of the search warrant contained false averments – and that without the false averments, the affidavit lacked probable cause. Specifically, Libretti asserts that the averment that he had transferred in excess of $250,000 to a person/entity in Canada is false, and also that Woodson falsely claimed that a substance known

-4-

as "Spice" was a controlled substance.[2]

A party may only challenge the veracity of an affidavit if that party can make a substantial showing that the affiant knowingly, intentionally, or with reckless disregard for the truth, included a false statement, and the false statement was necessary to a finding of probable cause. *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998) (citing *Franks v. Delaware*, 438 U.S. 154, 155 (1978)). If the false statement is <u>not</u> material to the probable-cause finding, there is no Fourth Amendment violation. *Mays,* 134 F.3d at 815. Misrepresentations can be based on omissions as well as affirmative misrepresentations. *Id*. Omissions must also be critical to the finding of probable cause to be material. *Id*. If, however, probable cause exists after excising the alleged false statements or adding the omissions, the defendant is entitled to qualified immunity. *United States v. Cummins*, 912 F.2d 98, 101 (6th Cir. 1990).

The Court finds that, absent the alleged misrepresentations, there was still probable cause to believe that evidence of criminal activity would be located at Libretti's Ohio residence or in his safe deposit box.

In the subject affidavit, Woodson averred that he had been a special agent for the DEA since 1992, and prior to that he was employed as a special agent with the Wyoming Division of Criminal investigation for 6 years and served as a police officer for 5 years. (Woodson's Affidavit is located at Doc #: 29-2 at 9-26.) Based on his 20-plus years of experience, he observed, among other things, that drug-traffickers generally:

---

[2]It is noteworthy that, although Libretti challenges Woodson's averment that he transferred in excess of $250,000 to a person/entity in Canada, he is silent regarding Woodson's averment that his review of Libretti's bank records corroborated Breeden's assertion that Libretti directed him to deposit the proceeds from the May 2010 drug transaction into Libretti's account.

- place assets in names other than their own but over which they continue to maintain control;

- maintain books, records, receipts, airline tickets, prepaid credit card and other documents relating to the distribution of controlled substances;

- use computers to maintain records, notes, emails, etc. of their enterprise;

- conceal the proceeds and contraband from their enterprise in their residences;

- travel to purchase and distribute controlled substances;

- maintain addresses and telephone numbers of their associates in computers, cell phones or other electronic media;

- take pictures of themselves and their associates;

- use safes to store contraband or currency; and

- use cell phones to communicate with members of their organization and to orchestrate trafficking.

(Woodson Aff. ¶ 3.)

With regard to Libretti specifically, Woodson averred that the following information had been obtained pursuant to an ongoing investigation of methamphetamine-trafficking in the District of Wyoming, which included the use of various investigative techniques including confidential sources, witness interviews, surveillance, court-authorized pen registers, a federal grand jury, and court authorized telephone intercepts:

- In the late 1980s and early 1990s, the Wyoming Division of Criminal Investigation conducted an investigation into the drug-trafficking activities of Libretti. The investigation revealed that he had frequently used safe deposit boxes, accounts in other individuals' names, and other methods to conceal the location, source, etc. of Libretti's drug proceeds.[3] That investigation resulted in Libretti pleading guilty and serving a 20-

---

[3]Libretti argues that the averment in this sentence should not be considered by this Court because it amounts to nothing more than rumors and gossip. (See Opp. Br. at 5; Doc #: 34-1 at 3.) Not so. This fact has long been a matter of public record. *See Libretti v. United States*, 516 U.S. 29, 32-33 (1995). *See also Huff v. First Energy Corp.*, No. 5:12 CV 2583, 2013 WL 5234224, at

      year sentence for operating a Continuing Criminal Enterprise. Libretti was released on May 6, 2008.

- In 2010, Woodson was personally involved in the investigation of methamphetamine-trafficking in the District of Wyoming during which a federal court had authorized intercepts of various telephones. The intercepts revealed that, on or about May 19, 2010, two individuals named Breeden and Herrick traveled to Phoenix, Arizona to obtain methamphetamine which was to be transported back to Colorado and Wyoming for re-distribution.

- On May 21, 2010, agents conducting surveillance stopped Breeden and Herrick near Cheyenne, Wyoming – resulting in the seizure of massive amounts of pure/actual methamphetamine. During subsequent interviews of Breeden, he advised that he had purchased the methamphetamine in Phoenix, Arizona from Libretti – which information was later corroborated by Herrick. Information obtained from the U.S. Probation and Parole Office revealed that Libretti, who was on supervised release for his CCE conviction, had obtained authorization from the Office to travel to Phoenix, Arizona at this time.

- Breeden also advised that Libretti had instructed him to deposit the proceeds from the drug transaction directly into Libretti's Wells Fargo Account. A review of Libretti's subpoenaed bank records corroborated Breeden's statement that he deposited the drug proceeds in Libretti's account.

- In June 2010, agents executed a search warrant at Libretti's residence in Casper, Wyoming – which search resulted in, among other things, the seizure of U.S. currency concealed in the heat ducts of Libretti's residence.

- Information received from U.S. Probation and Libretti's bank accounts suggested that he was not reporting all legitimate sources of income to his probation officer.

- On March 18, 2011, the federal grand jury for the District of Wyoming returned an indictment charging Libretti with conspiracy to possess with intent to distribute, and to distribute, 50 grams of more of methamphetamine actual from January 2010 through March 18, 2011.

- Based on the foregoing investigation, his training and experience, and his familiarity with Libretti, Woodson believed that Libretti was involved in the distribution of controlled substances; he was using various methods to conceal the proceeds obtained therefrom;

---

*6 (N.D.Ohio Sep. 17, 2013) (federal courts may consider matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion) (citations omitted). This factual allegation is relevant to the probable-cause determination because it reflects Libretti's modus operandi for storing/concealing evidence common to the drug trade.

and evidence and/or fruits of this crime would be found at his residence, on his computer, and in his bank, travel, telephone, and credit card records reflecting the purchase and/or location of assets and U.S. currency.

(Woodson Aff. ¶ 5-15.)

The Court finds that these unchallenged averments, separate and independent from the averments Libretti claims were false,[4] support a finding of probable cause to search Libretti's Ohio residence and safe deposit box for fruits or evidence of drug-trafficking. While Woodson was not required to establish probable cause that Libretti committed a specific crime in order to establish probable cause for the search warrant, the indictment against Libretti returned a few days earlier in Wyoming in fact did so. *Aronson v. City of Akron*, 116 F.3d 804, 814 (6th Cir. 1997) (indictment constitutes *prima facie* evidence of probable cause); *Woodyard v. County of Essex*, 514 Fed.Appx. 177, 183 (3rd Cir. Mar. 5, 2013) (grand jury indictment constitutes *prima facie* evidence of probable cause to prosecute); *United States v. Loud Hawk*, 474 U.S. 302, 322 n.6 (1968) (an indictment constitutes a formal assertion of probable cause). Woodson was only required to demonstrate a fair probability that the specific items to be searched for and seized would be found on the property to which entry was sought. *Frazier*, 423 F.3d at 532 (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

\*   \*   \*

Libretti argues that Woodson omitted facts from his affidavit which were material to the probable-cause determination. As previously noted, misrepresentations can be based on omissions as well as misrepresentations. *Mays,* 134 F.3d at 815. However, "material omissions

---

[4]Again, the allegedly false misrepresentations are Woodson's averments that Libretti had transferred in excess of $250,000 to a person/entity in Canada false, and that the substance known as Spice was a controlled substance.

-8-

are less likely to present a question of impermissible official conduct than affirmative falsehoods." *United States v. Merrell*, 330 Fed.Appx.556, 560 (6th Cir. 2009) (citing *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990) and *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)). "This is because an allegation of omission 'potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to [a criminal] defendant's benefit.' " *Id.* (citing *Martin*, 920 F.2d at 398). Furthermore, affidavits don't have to be perfect and they don't have to provide every specific piece of information to be upheld. *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005) (citing *Allen*, 211 F.3d at 976)).

The omissions Libretti asserts were material and which he claims Woodson intentionally omitted fall largely within two categories. The first category consists of information relating to the reliability and veracity of Breeden and Herrick.[5] Among other things, Libretti complains that Woodson failed to assert in his affidavit the fact that Breeden told several lies to law enforcement agents after his arrest (Comp. ¶ 67); Breeden and Herrick had been smoking methamphetamine when they drove to and from Arizona (id. ¶¶ 69, 70); Herrick did not identify Libretti as the source of the drugs until after an agent showed him a picture of Libretti (id. ¶ 68); in his testimony before the grand jury, Breeden testified that he obtained the drugs from Libretti at a shopping mall in Phoenix that apparently does not exist (id. ¶ 71); Breeden was discharged from military services after six months based on a diagnosis of personality disorder (id. ¶ 81);

---

[5]It is noteworthy that Libretti questions the veracity of Breeden and Herrick when their statements implicate him in drug-trafficking, then suggests that their omitted exculpatory statements are believable and would have affected the probable-cause determination. (Compare Compl ¶¶ 67, 69, 70, 81, 82, 89 with ¶¶ 31, 32, 65, 68.)

and Breeden had a propensity to make false statements and exaggerations (id. ¶ 82); Herrick had a propensity to make false statements (id. ¶ 83).

The fact that Breeden and Herrick were caught red-handed with massive amounts of methamphetamine put the court on notice as to their questionable character. Because they admitted their involvement in drug-trafficking, however, their account "becomes even more credible." *See Hale*, 396 F.3d at 725. *See also United States v. Harris*, 403 U.S. 573, 583 (1971) ("People do not lightly admit a crime and place critical evidence in the hand of the police in the form of their admissions.") Furthermore, the motives of an informant to lie are not critical to the probable cause analysis. *See Martin*, 920 F.2d at 398 (rejecting the argument that a criminal defendant was entitled to a *Franks* hearing because the affiant failed to state that his principal informant was a person of questionable character *and where the information provided by the informant had already led to the defendant's indictment*). Nonetheless, Breeden's identification of Libretti as the source of methamphetamine was later corroborated by Herrick, and Woodson corroborated the information provided through sources other than Herrick (e.g., Libretti's bank records).

The second category relates to Libretti's claim that Woodson failed to perform a proper funds-tracing analysis. At best, this omission may support a conclusion that Woodson should have performed a more thorough investigation before procuring a search warrant. *Badillo v. Stopko*, Civil Action No. 11-4815 (JEI/JS), 2012 WL 2339759, at *4-5 (D.N.J. Jun. 19, 2012). But without more, it is insufficient to support a Fourth Amendment claim. *Id.* *See also United States v. Thoms*, No. 3:10-cr-069-JWS-JDR, 2011 WL 87337, at *3 (D.Alaska Jan. 11, 2011) ("An officer seeking a search warrant has no obligation to conduct a thorough investigation as to

-10-

an alleged crime before seeking a search warrant to obtain evidence of the crimes being investigated.") (citations omitted).  And, "[a] failure to investigate more thoroughly or a failure to provide the court with more information that might better illuminate the situation is, at most, negligence." *United States v. Doan*, No. 05-CR-179-S, 2006 WL 5866677, at *2 (W.D.Wis. Mar. 13, 2006).

*     *     *

Libretti argues that there was no probable cause to search his safe deposit box.  But Woodson averred that, based on his training and experience, drug dealers often use safes and other such items to store illicit drugs, currency and other assets; during the investigation of Libretti's criminal activity which resulted in his prior conviction for operating a criminal enterprise, he frequently used bank safe deposit boxes to store proceeds; he maintained a safe deposit box in Ohio in March 2011; and he had just been indicted for a drug-trafficking conspiracy that allegedly continued from January 2010 to March 18, 2011.  The Court finds that these facts establish probable cause to search the safe deposit box.

*     *     *

Libretti's argument that the search warrant was supported by stale information, and that probable cause had dissipated after the June 2010 search, is premised upon the erroneous conclusion that law enforcement officials were seeking to search his Cleveland residence and safe deposit box for evidence of the single drug transaction that occurred in May 2010.  He repeatedly ignores the fact that, at the time the search warrant issued, a federal indictment had just been returned charging him with engaging in ongoing drug-trafficking between January 2010 and March 2011.  Furthermore, the information predating June 2010 was not stale because

it showed how he had concealed his drug proceeds (i.e., his modus operandi) in conducting his previous drug-trafficking enterprise.

Additionally, the cases Libretti cites to support this argument, including a 1925 case from the Ninth Circuit involving the unlawful sale of jackass brandy during prohibition – are all distinguishable from this case because they involved *repeated searches* of the *same premises* pursuant to *a single search warrant*.

As one example, in *United States v. Keszthelyi*, 308 F.3d 557 (6th Cir. 2002), officers executed a warrant to search the defendant's residence for contraband or evidence of drug-trafficking and found nothing. The next day, an officer who did not participate in the search went to that residence without obtaining a new warrant, searched the premises, and found a vial of cocaine hidden behind the stove. Three days later, the officers returned to the premises yet again but with a second search warrant, executed that warrant, and again found nothing. The defendant filed a motion to suppress the fruit of the warrantless search because, absent a *new* warrant, probable cause to find evidence of contraband had dissipated. The government argued that the search on the second day was a "reasonable continuation" of the search executed on the first day; thus, there was no Fourth Amendment violation. The court found that the warrantless search was not a reasonable continuation of the original search – but declined to suppress the evidence because of its conclusion that the officers executing the search pursuant to the second warrant would have inevitably discovered the evidence found during the unlawful search.

Unlike *Keszthelyi* and the other cases cited by Libretti, the search of his Ohio residence occurred nine months after the search of his Wyoming residence, it was executed pursuant to a second warrant, and it was procured after a federal grand jury determined there was probable

cause to indict Libretti for engaging in drug-trafficking between January 2010 and March 2011. *See United States v. Remble*, No. 1:05-CR-113-001, 2006 WL 462451, at *3 (S.D.Ohio Feb. 22, 2006) (indictment for alleged probable participation in a drug-trafficking crime is sufficient probable cause to search a criminal defendant's residence because drug dealers are likely to conceal evidence where they live); *United States v. Apker*, 705 F.2d 293, 303 (8th Cir. 1983), abrogation on other grounds recognized by *Wabun-Inini v. Sessions*, 900 F.2d 1234 (8th Cir. 1990) (return of indictment by grand jury is sufficient probable cause to issue a search warrant). For all these reasons, the Court concludes that Libretti has failed to establish a constitutional violation.

**B.**

Libretti argues that the affidavit is unconstitutionally overbroad because it fails to limit the description of things to be searched <u>by relevant dates</u>.  The search warrant authorized the seizure of the following items related to Libretti's alleged involvement in the distribution of methamphetamine:

> Books, records, receipts, notes, ledgers, and other documents relating to the manufacturing, transporting, ordering, purchasing, obtaining and/or distributing controlled substances.
>
> Financial documents, including but not limited to . . . safe deposit records, safe deposit keys, bank records, . . . checking account records," . . . and other items evidencing the obtainment, concealment and/or expenditure of money.
>
> Records, including but not limited to, . . . vehicle titles, . . . records showing occupancy of the premises . . . Records of family members including but not limited to the names of siblings and other relatives.
>
> Photographs and/or video recording including but not limited to photographs and/or video recordings of co-conspirators, assets and/or controlled substances. Proceeds of unlawful activity . . .

> Computers, computer storage medium, including but not limited to, hard drives, computer disc, computer cds, memory sticks and removable storage, which are instrumentality of a crime.
>
> All records relating to violations of drug trafficking offenses and/or conspiracy to do the same, including any information related to sources of controlled substances, including names, addresses, phone numbers, e-mail addresses, web sites, or any other identifying information, lists of customers and related identifying information, any information regarding travel.  The terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any electrical, electronic, or magnetic form (such as any information on an electronic or magnetic form (such as any information on an electronic or magnetic storage device, thumb drives, including floppy diskettes, hard disks, zip disks, CD-ROMs, optical disks, backup tapes, memory sticks, as well as printouts or readouts from any magnetic storage device).

(Doc #: 29-2, Ex. A.)

For a warrant to be valid under the Fourth Amendment, it must "particularly describ[e] the place to be searched and the persons or things to be seized."  U.S. CONST. AMEND. IV.  The degree of specificity required in a search warrant depends on the crime involved and the types of items sought.  *United States v. Blakeney*, 942 F.2d 1001, 1026-27 (6th Cir. 1991) (citing *United States v. Henderson*, 848 F.2d 1374, 1383 (6th Cir. 1988), *cert. denied,* 488 U.S. 1005 (1989)).  The use of a generic term or a general description is not *per se* violative of the Fourth Amendment.  *Id*. (citing *United States v. Cook*, 657 F.2d 703, 733 (5th Cir. 1981)).  "When a more specific description of the items to be seized is unavailable, a general description will suffice."  *Id*. at 1027 (citing *Cook*, 657 F.2d at 733)

The main case Libretti cites to support his contention that the warrant violated the Fourth Amendment because it did not contain date restrictions is *United States v. Ford*, 184 F.3d 566 (6th Cir. 1999).  *Ford*, however, supports Woodson's position.

In *Ford*, defendants were convicted of operating an illegal gambling business, money laundering, and tax evasion. The Sixth Circuit held that the degree of specificity required in a search warrant depends on what information is reasonably available to the police in a particular case. *Id*. at 575 (citation omitted). A general description may suffice when the police can supply no better information, but fails when a narrower description is available. *Id*. The court distinguished between the affidavit language supporting a search for documents relating to the tax charge, versus the affidavit language supporting a search for evidence and/or fruits of gambling. The court determined that those portions of the warrant relating to financial documents significantly predating the licensure of the defendant's gambling operation were insufficiently particular to withstand Fourth Amendment scrutiny. *Ford*, 184 F.3d at 576-77. However, the court found that those portions of the warrant limiting the search to the fruits and evidence of gambling were sufficiently particular to survive Fourth Amendment analysis. *Id*. at 578. The court explained, "Even though those portions do not contain a time limitation, their subject-matter limitation (fruits and evidence of gambling) fulfills the same function as a time limitation would have done, by limiting the warrant to evidence of the crime described in the affidavit." *Id*. *See also United States v. Harmon*, No. 3:05 CR 113, 2006 WL 3913439, at *13 (E.D.Tenn. Apr. 4, 2006) (finding that the failure to limit broad descriptive terms by relevant dates inconsequential where the subject-matter limitation (fruits and evidence of drug-trafficking activities) fulfilled the same function as a time limitation would have done); *State v. McCreary*, Nos. 2009 CR 0259, 2008 CR 0370, 2011 WL 382757, at * (Ohio App. 6 Dist. Feb. 8, 2011) (*Ford* does <u>not</u> stand for the proposition that the failure to restrict broad descriptive terms to

known, relevant dates automatically renders a warrant invalid – explaining "it is only where such terms are not limited by time *or subject matter* that the warrant will be held invalid.")

Because the warrant in the instant case contains a subject-matter limitation (fruits and evidence of drug-trafficking), its failure to contain a time limitation does not violate the Fourth Amendment. *Ford*, 184 F.3d at 576-78.

## C.

Libretti contends that the property seized by the officers conducting the search exceeded the scope of the warrant. "A search does not become invalid merely because some items not covered by a warrant are seized." *Marcels v. Twp. of Redford*, 693 F.3d 589, 602 (6th Cir. 2012) (citing *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985). An otherwise valid search becomes a constitutionally impermissible general search only where the searching officers exhibit a flagrant disregard for the limitations of a search warrant. *See Lambert*, 771 F.2d at 93. Courts have found that an officer flagrantly disregards the scope of a search warrant where the officer exceeds the scope of the warrant in the places to be searched rather than the items seized. *Walker v. Georgia*, 4467 U.S. 39, 43 n.3 (1984) (emphasis added).

Libretti asserts that Woodson improperly seized, among other things, photographs, computer storage devices, data storage medium, instruction forms for tax returns, newspaper articles, case printouts, and various correspondence. (Comp. ¶ 8.a.) However, the search warrant issued by the magistrate judge specifically allowed for the seizure of documents, photographs, computer storage devices, all records relating to violations of drug-trafficking offenses, car titles, and financial documents. (See supra, at 12-13.) Libretti also complains that the seizure of legal herbs from his residence violated the Fourth Amendment. It is undisputed

that a substance <u>suspected</u> to be Spice was seized from Libretti's property. Although subsequent laboratory analysis determined that the substance seized was not an illegal form of Spice, the seizure was certainly within the confines of things authorized to be seized pursuant to the warrant.

Libretti cites numerous cases to support his position that Woodson's seizure of property outside the scope of the warrant violated his Fourth Amendment rights. Those cases are all distinguishable because they involve seizure of property pursuant to the plain view doctrine. In one case, for example, the court determined that the seizure of a rifle discovered in plain view during the search of a residence for stolen jewelry and a television violated the Fourth Amendment because it was not intrinsic evidence of a crime and could not be justified under the plain view doctrine. *United States v. Szymkowiak*, 727 F.2d 95 (6th Cir. 1984). *See also United State v. Gray*, 484 F.2d 352 (6th Cir. 1973) (holding the same where two rifles were seized during the search of a premises for alcoholic beverages sold without a license); *United States v. Beal*, 810 F.2d 574 (6th Cir. 1987) (holding the same where two pen guns were seized during the search of a residence for stolen furniture). None of these cases involved a warrant to search a residence for contraband or evidence common to the drug trade.

Libretti complains that some of the items seized were not returned to him or not returned in a timely manner. However, the Complaint does not allege that Libretti's property was in the custody and control of Woodson in his individual capacity, or that Woodson was the party responsible for the return, alleged loss and/or destruction of his personal property. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009) ("a plaintiff must plead that each Government-official defendant, through his own individual actions, has violated the Constitution. *Conner v. United*

-17-

*States*, No. 4:09 CV 2952, 2010 WL 1751950, at *2 (N.D.Ohio Apr. 30, 2010) ("Plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior.") (citing *Rizzo v. Goode*, 423 U.S. 362, 371 (1976)). If a plaintiff fails to articulate facts indicating that a constitutional violation has been committed by a specific individual defendant, the defendant is entitled to qualified immunity. *Siegert v. Gilley,* 500 U.S. 226, 231 (1991).

**V.**

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Fifth Amended Complaint (**Doc #: 29**.)

**IT IS SO ORDERED.**

 */s/ Dan A. Polster    December 17, 2013*
**Dan Aaron Polster**
**United States District Judge**